

TEXAS APARTMENT ASSOCIATION
M E M B E R

*This lease is valid only if filled out before January 1, 2026.*

# Apartment Lease Contract

This is a binding contract. Read carefully before signing.

This Lease Contract ("Lease") is between you, the resident(s) as listed below and us. The terms "you" and "your" refer to all residents. The terms "we," "us," and "our" refer to the owner listed below.

## PARTIES

**Residents** Quintarius McKinnie

**Owner** Bishop Arts JV, LLC

**Occupants**

## LEASE DETAILS

**A. Apartment (Par. 2)**
Street Address: 2022 N Beckley Avenue Unit# 102
Apartment No. 1102     City: Dallas     State: TX  Zip: 75208

**B. Initial Lease Term.** Begins: 10/16/2024     Ends at 11:59 p.m. on: 01/15/2026

**C. Monthly Base Rent (Par. 3)**
$ 1805.00

**D. Prorated Rent**
$ 931.61
☒ due for the remainder of 1st month or
☐ for 2nd month

**E. Security Deposit (Par. 5)**
$ 1805.00

Note that this amount does not include any Animal Deposit, which would be reflected in an Animal Addendum.

**F. Notice of Termination or Intent to Move Out (Par. 4)**
A minimum of 60 days' written notice of termination or intent to move out required at end of initial Lease term or during renewal period

*If the number of days isn't filled in, notice of at least 30 days is required.*

**G. Late Fees (Par. 3.3)**

**Initial Late Fee**
☒ 10 % of one month's monthly base rent or
☐ $ 180.50
Due if rent unpaid by 11:59 p.m. on the 3rd (3rd or greater) day of the month

**Daily Late Fee**
☐ _____ % of one month's monthly base rent for _____ days or
☐ $ 0.00 for _____ days

**H. Returned Check or Rejected Payment Fee (Par. 3.4)**
$ 100.00

**I. Reletting Charge (Par. 7.1)**
A reletting charge of $ 1534.250 *(not to exceed 85% of the highest monthly Rent during the Lease term)* may be charged in certain default situations

**J. Early Termination Fee Option (Par. 7.2)**
$ 3610
Notice of 60 days is required.
*You are not eligible for early termination if you are in default.*
Fee must be paid no later than 30 days after you give us notice
*If any values or number of days are blank or "0," then this section does not apply.*

**K. Violation Charges**

**Animal Violation (Par. 12.2)**
Initial charge of $ 100.00 per animal (not to exceed $100 per animal) and
A daily charge of $ 50.00 per animal (not to exceed $10 per day per animal)

**Insurance Violation (Master Lease Addendum or other separate addendum)**
$ _____

**L. Additional Rent - Monthly Recurring Fixed Charges.** You will pay separately for these items as outlined below and/or in separate addenda, Special Provisions or an amendment to this Lease.

| | | | | | |
|---|---|---|---|---|---|
| Animal rent | $ | Cable/satellite | $ | Internet | $ 40.00 |
| Package service | $ 25.00 | Pest control | $ 5.00 | Stormwater/drainage | $ |
| Trash service | $ | Washer/Dryer | $ | | |
| Other: Valet Trash | | | | $ | 30.00 |
| Other: Smart Rent | | | | $ | 20.00 |
| Other: | | | | $ | |
| Other: | | | | $ | |

**M. Utilities and Other Variable Charges.** You will pay separately for gas, water, wastewater, electricity, trash/recycling, utility billing fees and other items as outlined in separate addenda, Special Provisions or an amendment to this Lease.

**Utility Connection Charge or Transfer Fee:** $ 50.00 (not to exceed $50) to be paid within 5 days of written notice (**Par. 3.5**)

**N. Other Charges and Requirements.** You will pay separately for these items or comply with these requirements as outlined in a Master Lease Addendum, separate addenda or Special Provisions. **Initial Access Device:** $ _____
**Additional or Replacement Access Devices:** $ 100.00     **Required Insurance Liability Limit (per occurrence):** $ 100000.00

**Special Provisions.** See Par. 32 or additional addenda attached. This Lease cannot be changed unless in writing and signed by you and us.

☑ Blue Moon eSignature Services Document ID: 468757199

LEASE TERMS AND CONDITIONS

1. **Definitions.** The following terms are commonly used in this Lease.

   1.1. **"Residents"** are those listed in "Residents" above who sign this Lease and are authorized to live in the apartment.

   1.2. **"Occupants"** are those listed in this Lease who are also authorized to live in the apartment, but who do not sign this Lease.

   1.3. **"Owner"** may be identified by an assumed name and is the owner only and not property managers or anyone else.

   1.4. **"Including"** in this Lease means "including but not limited to."

   1.5. **"Community Policies"** are the written apartment rules and policies, including property signage and instructions for care of our property and amenities, with which you, your occupants, and your guests must comply.

   1.6. **"Rent"** is monthly base rent plus additional monthly recurring fixed charges.

   1.7. **"Lease"** includes this document, any addenda and attachments, Community Policies and Special Provisions.

2. **Apartment.** You are leasing the apartment listed above for use as a private residence only.

   2.1. **Access.** In accordance with this Lease, you'll receive access information or devices for your apartment and mailbox, and other access devices including: _Fob_____
   _____
   _____.

   2.2. **Measurements.** Any dimensions and sizes provided to you relating to the apartment are only approximations or estimates; actual dimensions and sizes may vary.

   2.3. **Representations.** You agree that designations or accreditations associated with the property are subject to change.

3. **Rent. You must pay your Rent on or before the 1st day of each month (due date) without demand. There are no exceptions regarding the payment of Rent, and you agree not paying Rent on or before the 1st of each month is a material breach of this Lease.**

   3.1. **Payments.** You will pay your Rent by any method, manner and place we specify in accordance with this Lease. **Cash is not acceptable without our prior written permission. You cannot withhold or offset Rent unless authorized by law.** We may, at our option, require at any time that you pay Rent and other sums due in one single payment by any method we specify.

   3.2. **Application of Payments.** Payment of each sum due is an independent covenant, which means payments are due regardless of our performance. When we receive money, other than water and wastewater payments subject to government regulation, we may apply it at our option and without notice first to any of your unpaid obligations, then to accrued rent. We may do so regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than Rent and late fees are due upon our demand. After the due date, we do not have to accept any payments.

   3.3. **Late Fees.** If we don't receive your monthly base rent in full when it's due, you must pay late fees as outlined in Lease Details.

   3.4. **Returned Payment Fee.** You'll pay the fee listed in Lease Details for each returned check or rejected electronic payment, plus initial and daily late fees if applicable, until we receive full payment in an acceptable method.

   3.5. **Utilities and Services.** You'll pay for all utilities and services, related deposits, and any charges or fees when they are due and as outlined in this Lease. Television channels that are provided may be changed during the Lease term if the change applies to all residents.

   If your electricity is interrupted, you must use only battery-operated lighting (no flames). You must not allow any utilities (other than cable or Internet) to be cut off or switched for any reason—including disconnection for not paying your bills—until the Lease term or renewal period ends. If a utility is individually metered, it must be connected in your name and you must notify the provider of your move-out date. If you delay getting service turned on in your name by this Lease's start date or cause it to be transferred back into our name before you surrender or abandon the apartment, you'll be liable for the charge listed above (not to exceed $50 per billing period), plus the actual or estimated cost of the utilities used while the utility should have been billed to you. If your apartment is individually metered and you change your retail electric provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.

   3.6. **Lease Changes.** Lease changes are only allowed during the Lease term or renewal period if governed by Par. 10, specified in Special Provisions in Par. 32, or by a written addendum or amendment signed by you and us. At or after the end of the initial Lease term, Rent increases will become effective with at least 5 days plus the number of days' advance notice contained in Box F on page 1 in writing from us to you. Your new Lease, which may include increased Rent or Lease changes, will begin on the date stated in any advance notice we provide (without needing your signature) unless you give us written move-out notice under Par. 25, which applies only to the end of the current Lease term.

4. **Automatic Lease Renewal and Notice of Termination.** This Lease will automatically renew month-to-month unless either party gives written notice of termination or intent to move out as required by Par. 25 and specified on page 1. **If the number of days isn't filled in, notice of at least 30 days is required.**

5. **Security Deposit.** The total security deposit for all residents is due on or before the date this Lease is signed. Any animal deposit will be designated in an animal addendum. Security deposits may not be applied to Rent without our prior written consent.

   5.1. **Refunds and Deductions. You must give us your advance notice of move out as provided by Par. 25 and forwarding address in writing to receive a written description and itemized list of charges or refund. In accordance with this Lease and as allowed by law, we may deduct from your security deposit any amounts due under this Lease. If you move out early or in response to a notice to vacate, you'll be liable for rekeying charges.** Upon receipt of your move-out date and forwarding address in writing, the security deposit will be returned (less lawful deductions) with an itemized accounting of any deductions, no later than 30 days after surrender or abandonment, unless laws provide otherwise. Any refund may be by one payment jointly payable to all residents and distributed to any one resident we choose, or distributed equally among all residents.

6. **Insurance. Our insurance doesn't cover the loss of or damage to your personal property.** You will be required to have liability insurance as specified in this Lease unless otherwise prohibited by law. If you have insurance covering the apartment or your personal belongings at the time you or we suffer or allege a loss, you agree to require your insurance carrier to waive any insurance subrogation rights. Even if not required, we urge you to obtain your own insurance for losses due to theft, fire, flood, water, pipe leaks and similar occurrences. Most renter's insurance policies don't cover losses due to a flood.

7. **Reletting and Early Lease Termination.** This Lease may not be terminated early except as provided in this Lease.

   7.1. **Reletting Charge.** You'll be liable for a reletting charge as listed in Lease Details, (not to exceed 85% of the highest monthly Rent during the Lease term) if you: (A) fail to move in, or fail to give written move-out notice as required in Par. 25; (B) move out without paying Rent in full for the entire Lease term or renewal period; (C) move out at our demand because of your default; or (D) are judicially evicted. The reletting charge is not a termination, cancellation or buyout fee and does not release you from your obligations under this Lease, including liability for future or past-due Rent, charges for damages or other sums due.

   The reletting charge is a liquidated amount covering only part of our damages—for our time, effort, and expense in finding and processing a replacement resident. These damages are uncertain and hard to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of our damages and that the charge is due whether or not our reletting attempts succeed.

   7.2. **Early Lease Termination Option Procedure.** In addition to your termination rights referred to in 7.3 or 8.1 below, if this provision applies under Lease Details, you may opt to terminate this Lease prior to the end of the Lease term **if all of the following occur:** (a) as outlined in Lease Details, you give us written notice of early termination, pay the Early Termination Option fee in full and specify the date by which you'll move out; (b) you are not in default at any time and do not hold over; and (c) you repay all rent concessions, credits or discounts you received during the Lease term. If you are in default, the Lease remedies apply.

   7.3. **Special Termination Rights. You may have the right under Texas law to terminate this Lease early in certain situations involving military deployment or transfer, family violence, certain sexual offenses, stalking or death of a sole resident.**

8. **Delay of Occupancy.** We are not responsible for any delay of your occupancy caused by construction, repairs, cleaning, or a previous resident's holding over. This Lease will remain in force subject to (1) abatement of Rent on a daily basis during delay, **and** (2) your right to terminate this Lease in writing as set forth below. Rent abatement and Lease termination do not apply if the delay is for cleaning or repairs that don't prevent you from moving into the apartment.

   8.1. **Termination.** If we give written notice to you of a delay in occupancy when or after this Lease begins, you may terminate this Lease within 3 days after you receive written notice.

   If we give you written notice before the date this Lease begins and the notice states that a construction or other delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate this Lease within 7 days after receiving written notice.

   After proper termination, you are entitled only to refund of any deposit(s) and any Rent you paid.

☑ Blue Moon eSignature Services Document ID: 468757199

9. **Care of Unit and Damages.** You must promptly reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community because of a Lease violation; improper use, negligence, or other conduct by you, your invitees, your occupants, or your guests; or, as allowed by law, any other cause not due to our negligence or fault, except for damages by acts of God to the extent they couldn't be mitigated by your action or inaction.

*Unless damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs and replacements occurring during the Lease term or renewal period, including: (A) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment; (B) damage to doors, windows, or screens; and (C) damage from windows or doors left open.*

<div style="background:#c8102e;color:white;text-align:center;font-weight:bold">RESIDENT LIFE</div>

10. **Community Policies.** *Community Policies become part of this Lease and must be followed.* We may make changes, including additions, to our written Community Policies, and those changes can become effective immediately if the Community Policies are distributed and applicable to all units in the apartment community and do not change the dollar amounts owed under this Lease.

    **10.1.** **Photo/Video Release.** You give us permission to use any photograph, likeness, image or video taken of you while you are using property common areas or participating in any event sponsored by us.

    **10.2.** **Disclosure of Information.** At our sole option, we may, but are not obligated to, share and use information related to this Lease for law-enforcement, governmental, or business purposes. At our request, you authorize any utility provider to give us information about pending or actual connections or disconnections of utility service to your apartment.

    **10.3.** **Guests.** We may exclude from the apartment community any guests or others who, in our sole judgment, have been violating the law, violating this Lease or our Community Policies, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area anyone who refuses to show photo identification or refuses to identify himself or herself as a resident, an authorized occupant, or a guest of a specific resident in the community.

    Anyone not listed in this Lease cannot stay in the apartment for more than ___7___ days in one week without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, 2 days total per week will be the limit.

    **10.4.** **Notice of Convictions and Registration.** You must notify us within 15 days if you or any of your occupants: (A) are convicted of any felony, (B) are convicted of any misdemeanor involving a controlled substance, violence to another person, or destruction of property, or (C) register as a sex offender. Informing us of a criminal conviction or sex-offender registration doesn't waive any rights we may have against you.

    **10.5.** **Odors, Noise and Construction.** You agree that odors and smells (including those related to cooking), everyday noises or sounds related to repair, renovation, improvement, or construction in or around the property are all a normal part of a multifamily living environment and that it is impractical for us to prevent them from penetrating your apartment.

11. **Conduct.** You agree to communicate and conduct yourself in a lawful, courteous and reasonable manner at all times when interacting with us, our representatives and other residents or occupants. Any acts of unlawful, discourteous or unreasonable communication or conduct by you, your occupants or guests is a breach of this Lease.

    You must use customary diligence in maintaining the apartment, keeping it in a sanitary condition and not damaging or littering the common areas. Trash must be disposed of at least weekly. You will use your apartment and all other areas, including any balconies, with reasonable care. We may regulate the use of passageways, patios, balconies, porches, and activities in common areas.

    **11.1.** **Prohibited Conduct.** You, your occupants, and your guests will not engage in certain prohibited conduct, including the following activities:

    (a) criminal conduct; manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; or, except when allowed by law, displaying or possessing a gun, knife, or other weapon in the common area, or in a way that may alarm others;

    (b) behaving in a loud, obnoxious or dangerous manner;

    (c) disturbing or threatening the rights, comfort, health, safety, or convenience of others, including us, our agents, or our representatives;

    (d) disrupting our business operations;

    (e) storing anything in closets containing water heaters or gas appliances;

    (f) tampering with utilities or telecommunication equipment;

    (g) bringing hazardous materials into the apartment community;

    (h) using windows for entry or exit;

    (i) heating the apartment with gas-operated appliances;

    (j) making bad-faith or false allegations against us or our agents to others;

    (k) smoking of any kind, that is not in accordance with this Lease;

    (l) using glass containers in or near pools; or

    (m) conducting any kind of business (including child-care services) in your apartment or in the apartment community—except for any lawful business conducted "at home" by computer, mail, or telephone if customers, clients, patients, employees or other business associates do not come to your apartment for business purposes.

12. **Animals.** *No living creatures of any kind are allowed, even temporarily, anywhere in the apartment or apartment community unless we've given written permission.* If we allow an animal, you must sign a separate Animal Addendum and, except as set forth in the addendum, pay an animal deposit and applicable fees and additional monthly rent, as applicable. An animal deposit is considered a general security deposit. You represent that any requests, statements and representations you make, including those for an assistance or support animal, are true, accurate and made in good faith. Feeding stray, feral or wild animals is a breach of this Lease.

    **12.1.** **Removal of Unauthorized Animal.** We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a written notice of our intent to remove the animal within 24 hours; and (2) following the procedures of Par. 14. We may: keep or kennel the animal; turn the animal over to a humane society, local authority or rescue organization; or return the animal to you if we consent to your request to keep the animal and you have completed and signed an Animal Addendum and paid all fees. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. You must pay for the animal's reasonable care and kenneling charges.

    **12.2.** **Violations of Animal Policies and Charges.** If you or any guest or occupant violates the animal restrictions of this Lease or our Community Policies, you'll be subject to charges, damages, eviction, and other remedies provided in this Lease, including animal violation charges listed in Lease Details from the date the animal was brought into your apartment until it is removed. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for all cleaning and repair costs, including defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead in enforcing animal restrictions and Community Policies.

13. **Parking.** You may not be guaranteed parking. We may regulate the time, manner, and place of parking of all motorized vehicles and other modes of transportation, including bicycles and scooters, in this Lease. In addition to other rights we have to tow or boot vehicles under state law, we also have the right to remove, at the expense of the vehicle owner or operator, any vehicle that is not in compliance with this Lease.

14. **When We May Enter.** If you or any other resident, guest or occupant is present, then repair or service persons, contractors, law officers, government representatives, lenders, appraisers, prospective residents or buyers, insurance agents, persons authorized to enter under your rental application, or our representatives may peacefully enter the apartment at reasonable times for reasonable business purposes. If nobody is in the apartment, then any such person may enter peacefully and at reasonable times (by breaking a window or other means when necessary) for reasonable business purposes if written notice of the entry is left in a conspicuous place in the apartment immediately after the entry. We are under no obligation to enter only when you are present, and we may, but are not obligated to, give prior notice or make appointments.

☑ Blue Moon eSignature Services Document ID: 468757199

## 15. Requests, Repairs and Malfunctions.

**15.1. Written Requests Required.** *If you or any occupant needs to send a request—for example, for repairs, installations, services, ownership disclosure, or security-related matters— it must be written and delivered to our designated representative in accordance with this Lease* (except for fair-housing accommodation or modification requests or situations involving imminent danger or threats to health or safety, such as fire, smoke, gas, explosion, or crime in progress). Our written notes regarding your oral request do not constitute a written request from you. Our complying with or responding to any oral request doesn't waive the strict requirement for written notices under this Lease. A request for maintenance or repair by anyone residing in your apartment constitutes a request from all residents. *The time, manner, method and means of performing maintenance and repairs, including whether or which vendors to use, are within our sole discretion.*

**15.2. Your Requirement to Notify.** You must promptly notify us in writing of air conditioning or heating problems, water leaks or moisture, mold, electrical problems, malfunctioning lights, broken or missing locks or latches, or any other condition that poses a hazard or threat to property, health, or safety. Unless we instruct otherwise, you are required to keep the apartment cooled or heated according to this Lease. Air conditioning problems are normally not emergencies.

**15.3. Utilities.** We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to perform work or to avoid property damage or other emergencies. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately.

**15.4. Your Remedies.** We'll act with customary diligence to make repairs and reconnections within a reasonable time, taking into consideration when casualty-insurance proceeds are received. Unless required by statute after a casualty loss, or during equipment repair, your Rent will not abate in whole or in part. "Reasonable time" accounts for the severity and nature of the problem and the reasonable availability of materials, labor, and utilities. *If we fail to timely repair a condition that materially affects the physical health or safety of an ordinary resident as required by the Texas Property Code, you may be entitled to exercise remedies under § 92.056 and § 92.0561 of the Texas Property Code. If you follow the procedures under those sections, the following remedies, among others, may be available to you: (1) termination of this Lease and an appropriate refund under 92.056(f); (2) have the condition repaired or remedied according to § 92.0561; (3) deduct from the Rent the cost of the repair or remedy according to § 92.0561; and 4) judicial remedies according to § 92.0563.*

## 16. Our Right to Terminate for Apartment Community Damage or Closure. 
If, in our sole judgment, damages to the unit or building are significant or performance of needed repairs poses a danger to you, we may terminate this Lease and your right to possession by giving you at least 7 days' written notice. If termination occurs, you agree we'll refund only prorated rent and all deposits, minus lawful deductions. We may remove and dispose of your personal property if, in our sole judgment, it causes a health or safety hazard or impedes our ability to make repairs.

**16.1. Property Closure.** We also have the right to terminate this Lease and your right to possession by giving you at least 30 days' written notice of termination if we are demolishing your apartment or closing it and it will no longer be used for residential purposes for at least 6 months, or if any part of the property becomes subject to an eminent domain proceeding.

## 17. Assignments and Subletting. 
You may not assign this Lease or sublet your apartment. You agree that you won't rent, offer to rent or license all or any part of your apartment to anyone else unless otherwise agreed to in advance by us in writing. You agree that you won't accept anything of value from anyone else for the use of any part of your apartment. You agree not to list any part of your apartment on any lodging or short-term rental website or with any person or service that advertises dwellings for rent.

## 18. Security and Safety Devices. 
**We'll pay for missing security devices that are required by law. You'll pay for: (A) rekeying that you request (unless we failed to rekey after the previous resident moved out); and (B) repairs or replacements because of misuse or damage by you or your family, your occupants, or your guests.** You must pay immediately after the work is done unless state law authorizes advance payment. You must also pay in advance for any additional or changed security devices you request.

Texas Property Code secs. 92.151, 92.153, and 92.154 require, with some exceptions, that we provide at no cost to you when occupancy begins: (A) a window latch on each window; (B) a doorviewer (peep-hole or window) on each exterior door; (C) a pin lock on each sliding door; (D) either a door-handle latch or a security bar on each sliding door; (E) a keyless bolting device (deadbolt) on each exterior door; and (F) either a keyed doorknob lock or a keyed deadbolt lock on one entry door. Keyed locks will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by law. If we fail to install or rekey security devices as required by law, you have the right to do so and deduct the reasonable cost from your next Rent payment under Texas Property Code sec. 92.165(1). We may deactivate or not install keyless bolting devices on your doors if (A) you or an occupant in the dwelling is over 55 or disabled, and (B) the requirements of Texas Property Code sec. 92.153(e) or (f) are satisfied.

## 18.1. Smoke Alarms and Detection Devices. 
We'll furnish smoke alarms or other detection devices required by law or city ordinance. We may install additional detectors not so required. We'll test them and provide working batteries when you first take possession of your apartment. Upon request, we'll provide, as required by law, a smoke alarm capable of alerting a person with a hearing impairment.

You must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. Neither you nor your guests or occupants may disable alarms or detectors. *If you damage or disable the smoke alarm or remove a battery without replacing it with a working battery, you may be liable to us under Texas Property Code sec. 92.2611 for $100 plus one month's Rent, actual damages, and attorney's fees.*

## 18.2. Duty to Report. 
You must immediately report to us any missing, malfunctioning or defective security devices, smoke alarms or detectors. You'll be liable if you fail to report malfunctions, or fail to report any loss, damage, or fines resulting from fire, smoke, or water.

## 19. Resident Safety and Loss. 
*Unless otherwise required by law, none of us, our employees, agents, or management companies are liable to you, your guests or occupants for any damage, personal injury, loss to personal property, or loss of business or personal income, from any cause, including but not limited to: negligent or intentional acts of residents, occupants, or guests; theft, burglary, assault, vandalism or other crimes; fire, flood, water leaks, rain, hail, ice, snow, smoke, lightning, wind, explosions, interruption of utilities, pipe leaks or other occurrences unless such damage, injury or loss is caused exclusively by our negligence.*

*We do not warrant security of any kind.* You agree that you will not rely upon any security measures taken by us for personal security, and that you will call 911 and local law enforcement authorities if any security needs arise.

You acknowledge that we are not equipped or trained to provide personal security services to you, your guests or occupants. You recognize that we are not required to provide any private security services and that no security devices or measures on the property are fail-safe. You further acknowledge that, even if an alarm or gate amenities are provided, they are mechanical devices that can malfunction. Any charges resulting from the use of an intrusion alarm will be charged to you, including, but not limited to, any false alarms with police/fire/ambulance response or other required city charges.

## 20. Condition of the Premises and Alterations.

**20.1. As-Is.** *We disclaim all implied warranties.* You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. You'll be given an Inventory and Condition Form at or before move-in. You agree that after completion of the form or **within 48 hours** after move-in, whichever comes first, you must note on the form all defects or damage, sign the form, return it to us, and the form accurately reflects the condition of the premises for purposes of determining any refund due to you when you move out. Otherwise, everything will be considered to be in a clean, safe, and good working condition. You must still send a separate request for any repairs needed as provided by Par. 15.1.

**20.2. Standards and Improvements.** Unless authorized by law or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. Unless this Lease states otherwise, we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls. No water furniture, washing machines, dryers, extra phone or television outlets, alarm systems, cameras, two-way talk device, video or other door-

☑ Blue Moon eSignature Services Document ID: 468757199

bells, or lock changes, additions, or rekeying must be rekeyed unless required by law or we've consented in writing. You may install a satellite dish or antenna, but only if you sign our satellite dish or antenna lease addendum, which complies with reasonable restrictions allowed by federal law. You must not alter, damage, or remove our property, including alarm systems, detection devices, appliances, furniture, telephone and television wiring, screens, locks, or security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (made with or without our consent) become ours unless we agree otherwise in writing.

**21. Notices.** Written notice to or from our employees, agents, or management companies constitutes notice to or from us. Notices to you or any other resident of the apartment constitute notice to all residents. Notices and requests from any resident constitute notice from all residents. Only residents can give notice of Lease termination and intent to move out under Par. 7.3. All notices and documents will be in English and, at our option, in any other language that you read or speak.

**21.1. Electronic Notice.** Notice may be given electronically *by us to you* if allowed by law. If allowed by law and in accordance with this Lease, electronic notice *from you to us* must be sent to the email address and/or portal specified in this Lease. Notice may also be given by phone call or to a physical address if allowed in this Lease.

You represent that you have provided your current email address to us, and that you will notify us in the event your email address changes.

<div style="text-align:center">**EVICTION AND REMEDIES**</div>

**22. Liability.** Each resident is jointly and severally liable for all Lease obligations. If you or any guest or occupant violates this Lease or our Community Policies, all residents are considered to have violated this Lease.

**22.1. Indemnification by You.** *You'll defend, indemnify and hold us and our employees, agents, and management company harmless from all liability arising from your conduct or requests to our representatives and from the conduct of or requests by your invitees, occupants or guests.*

**23. Default by Resident.**

**23.1. Acts of Default.** You'll be in default if: (A) you don't timely pay Rent, including monthly recurring charges, or other amounts you owe; (B) you or any guest or occupant violates this Lease, our Community Policies, or fire, safety, health, criminal or other laws, regardless of whether or where arrest or conviction occurs; (C) you give incorrect, incomplete, or false answers in a rental application or in this Lease; or (D) you or any occupant is charged, detained, convicted, or given deferred adjudication or pretrial diversion for (1) an offense involving actual or potential physical harm to a person, or involving the manufacture or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, or (2) any sex-related crime, including a misdemeanor.

**23.2. Eviction.** *If you default, including holding over, we may end your right of occupancy by giving you at least a 24-hour written notice to vacate.* Termination of your possession rights doesn't release you from liability for future Rent or other Lease obligations. *After giving notice to vacate or filing an eviction suit, we may still accept Rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction or any other contractual or statutory right.* Accepting money at any time doesn't waive our right to damages, to past or future Rent or other sums, or to our continuing with eviction proceedings. In an eviction, Rent is owed for the full rental period and will not be prorated.

**23.3. Acceleration.** Unless we elect not to accelerate Rent, all monthly Rent for the rest of the Lease term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due if, without our written consent: (A) you move out, remove property in preparing to move out, or you or any occupant gives oral or written notice of intent to move out before the Lease term or renewal period ends; and (B) you haven't paid all Rent for the entire Lease term or renewal period. Remaining Rent will also be accelerated if you're judicially evicted or move out when we demand because you've defaulted.

period, you must pay the first month's Rent when or before this Lease begins, all future Rent for the Lease term will be automatically accelerated without notice and become immediately due. We also may end your right of occupancy and recover damages, future Rent, attorney's fees, court costs, and other lawful charges.

**23.4. Holdover.** You and all occupants must vacate and surrender the apartment by or before the date contained in: (1) your move-out notice (2) our notice to vacate, (3) our notice of non-renewal, or (4) a written agreement specifying a different move-out date. If a holdover occurs, then you'll be liable to us for all Rent for the full term of the previously signed lease of a new resident who can't occupy because of the holdover, and, at our option, we may extend the Lease term and/or increase the Rent by 25% by delivering written notice to you or your apartment while you continue to hold over.

**23.5. Other Remedies.** We may report unpaid amounts to credit agencies as allowed by law. If we or our debt collector tries to collect any money you owe us, you agree that we or the debt collector may contact you by any legal means. If you default, you will pay us, in addition to other sums due, any rental discounts or concessions agreed to in writing that have been applied to your account. We may recover attorney's fees in connection with enforcing our rights under this Lease. All unpaid amounts you owe bear interest at the rate provided by Texas Finance Code Section 304.003(c) from the due date. You must pay all collection-agency fees if you fail to pay sums due within 10 days after you are mailed a letter demanding payment and stating that collection-agency fees will be added if you don't pay all sums by that deadline. You are also liable for a charge (not to exceed $150) to cover our time, cost and expense for any eviction proceeding against you, plus our attorney's fees and expenses, court costs, and filing fees actually paid.

**24. Representatives' Authority and Waivers.** *Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease or any part of it unless in writing and signed, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives, unless in writing and signed.* No action or omission by us will be considered a waiver of our rights or of any subsequent violation, default, or time or place of performance. *Our choice to enforce, not enforce or delay enforcement of written notice requirements, rental due dates, acceleration, liens, or any other rights isn't a waiver under any circumstances.* Delay in demanding sums you owe is not a waiver. Except when notice or demand is required by law, you waive any notice and demand for performance from us if you default. Nothing in this Lease constitutes a waiver of our remedies for a breach under your prior lease that occurred before the Lease term begins. Your Lease is subordinate to existing and future recorded mortgages, unless the owner's lender chooses otherwise.

All remedies are cumulative. Exercising one remedy won't constitute an election or waiver of other remedies. All provisions regarding our nonliability or nonduty apply to our employees, agents, and management companies. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.

<div style="text-align:center">**END OF THE LEASE TERM**</div>

**25. Move-Out Notice.** *Before moving out, you must give our representative advance written move-out notice as stated in Par. 4, even if this Lease has become a month-to-month lease.* The move-out date can't be changed unless we and you both agree in writing.

*Your move-out notice must comply with each of the following:*

(a)   Unless we require more than 30 days' notice, if you give notice on the first day of the month you intend to move out, move out will be on the last day of that month.

(b)   Your move-out notice must not terminate this Lease before the end of the Lease term or renewal period.

(c)   If we require you to give us more than 30 days' written notice to move out before the end of the Lease term, we will give you 1 written reminder not less than 5 days nor more than 90 days before your deadline for giving us your written move-out notice. If we fail to give a reminder notice, 30 days' written notice to move out is required.

(d)   You must get from us a written acknowledgment of your notice.

**26. Move-Out Procedures.**

**26. 1. Cleaning.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond

☑ Blue Moon eSignature Services Document ID: 468757199

Case 25-33026-sgj13   Doc 36-2   Filed 10/06/25   Entered 10/06/25 23:18:44   Desc
Index Plaintiffs A   Page 6 of 9

normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

**26.2. Move-Out Inspection.** We may, but are not obligated to, provide a joint move-out inspection. Our representatives have no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final accounting or refunding.

**27. Surrender and Abandonment.** You have **surrendered** the apartment when: (A) the move-out date has passed and no one is living in the apartment in our reasonable judgment; **or** (B) apartment keys and access devices listed in Par. 2.1 have been turned in to us—whichever happens first.

You have **abandoned** the apartment when all of the following have occurred: (A) everyone appears to have moved out in our reasonable judgment; (B) you've been in default for nonpayment of Rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated or transferred; **and** (C) you've not responded for 2 days to our notice left on the inside of the main entry door stating that we consider the apartment abandoned. An apartment is also considered abandoned 10 days after the death of a sole resident.

**27.1. The Ending of Your Rights.** Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the apartment; determine any security-deposit deductions; and remove or store property left in the apartment.

**27.2. Removal and Storage of Property.** We, or law officers, may—but have no duty to—remove or store all property that in our sole judgment belongs to you and remains in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) after you're judicially evicted or if you surrender or abandon the apartment.

***We're not liable for casualty, loss, damage, or theft.*** You must pay reasonable charges for our packing, removing and storing any property.

Except for animals, we may throw away or give to a charitable organization all personal property that is:

(1) left in the apartment after surrender or abandonment; **or**

(2) left outside more than 1 hour after writ of possession is executed, following judicial eviction.

An animal removed after surrender, abandonment, or eviction may be kenneled or turned over to a local authority, humane society, or rescue organization.

**GENERAL PROVISIONS AND SIGNATURES**

**28. TAA Membership.** We, the management company representing us, or any locator service that you used confirms membership in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located at the time of signing this Lease. If not, the following applies: (A) this Lease is voidable at your option and is unenforceable by us (except for property damages); and (B) we may not recover past or future rent or other charges. The above remedies also apply if both of the following occur: (1) this Lease is automatically renewed on a month-to-month basis more than once after membership in TAA and the local association has lapsed; and (2) neither the owner nor the management company is a member of TAA and the local association during the third automatic renewal. A signed affidavit from the affiliated local apartment association attesting to nonmembership when this Lease or renewal was signed will be conclusive evidence of nonmembership. Governmental entities may use TAA forms if TAA agrees in writing.

Name, address and telephone number of locator service (if applicable):

_____
_____
_____
_____

**29. Severability and Survivability.** If any provision of this Lease is invalid or unenforceable under applicable law, it won't invalidate the remainder of this Lease or change the intent of the parties. **Paragraphs 10.1, 10.2, 16, 22.1, 27, 30 and 31 shall survive the termination of this Lease.** This Lease binds subsequent owners.

**30. Controlling Law.** Texas law governs this Lease. All litigation arising under this Lease and all Lease obligations must be brought in the county, and precinct if applicable, where the apartment is located.

**31. Waivers.** By signing this Lease, you agree to the following:

**31.1. Class Action Waiver.** You agree that you will not participate in any class action claims against us or our employees, agents, or management company. You must file any claim against us individually, and ***you expressly waive your right to bring, represent, join or otherwise maintain a class action, collective action or similar proceeding against us in any forum.***

YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU COULD BE A PARTY IN A CLASS ACTION LAWSUIT. BY SIGNING THIS LEASE, YOU ACCEPT THIS WAIVER AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY. THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE.

**31.2. Force Majeure.** If we are prevented from completing substantial performance of any obligation under this Lease by occurrences that are beyond our control, including but not limited to, an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage or governmental regulation, then we shall be excused from any further performance of obligations to the fullest extent allowed by law.

**32. Special Provisions.** The following, or attached Special Provisions and any addenda or Community Policies provided to you, are part of this Lease and supersede any conflicting provisions in this Lease.

<u>Bridge Pm does not allow any form of</u>
<u>subleasing. Examples: Airbnb, VRBO ect.</u>
<u>Late Notice Delivery Fee: $50.00</u>
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Before submitting a rental application or signing this Lease, you should review the documents and may consult an attorney. You are bound by this Lease when it is signed. An electronic signature is binding. This Lease, including all addenda, is the entire agreement between you and us. You agree that you are NOT relying on any oral representations.

*Resident or Residents* (all sign below)

*Quintarius McKinnie*                          10/16/2024
(Name of Resident)                              Date signed

_____
(Name of Resident)                              Date signed

_____
(Name of Resident)                              Date signed

_____
(Name of Resident)                              Date signed

_____
(Name of Resident)                              Date signed

_____
(Name of Resident)                              Date signed

**Owner or Owner's Representative** (signing on behalf of owner)

*Emely Villarreal*
_____

☑ Blue Moon eSignature Services Document ID: 468757199

# E-SIGNATURE CERTIFICATE
*This certificate details the actions recorded during the signing of this Document.*

blue moon
SOFTWARE

**DOCUMENT INFORMATION**

| | |
|---|---|
| Status | Signed |
| Document ID | 468757199 |
| Submitted | 10/16/24 |
| Total Pages | 34 |
| Forms Included | Flood Disclosure Notice, Apartment Lease Form, Valet Trash Addendum, Lease Addendum for Allocating Trash Removal and Recycling Costs, Water/Wastewater Submetering Addendum, Addendum for Rent Concession, Animal Addendum, Bed Bug Addendum, Required Insurance Addendum to Lease Agreement, Community Policies Addendum, Construction Activities Addendum, Enclosed Garage Addendum, Insurance Addendum, Lease Addendum for Access Control Devices, Lease Addendum for Addressing Carrying Firearms Onsite, Lease Addendum for Allocating Services and Government Fees, Lease Addendum for Patio or Yard Maintenance, Lease Addendum Regarding Smoking, Mold Information and Prevention Addendum, Satellite Dish or Antenna Addendum, Security Guidelines, Intrusion Alarm Addendum |

**PARTIES**

## Quintarius McKinnie
signer key: 0df936ed78fb184a8e2688832b05baca
IP address: 172.59.195.117
signing method: Blue Moon eSignature Services
authentication method: eSignature by email mckinniequin7@gmail.com
browser: Mozilla/5.0 (iPhone; CPU iPhone OS 17_6_1 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/17.6 Mobile/15E148 Safari/604.1

*Quintarius McKinnie*

## Emely Villarreal
signer key: f34d96b025c02fa910a28956b4e4c55a
IP address: 104.156.174.1
signing method: Blue Moon eSignature Services
authentication method: eSignature by email leslie.galvan@bridgepm.com

*Emely Villarreal*

## (Assistant Property Manager)

# DOCUMENT AUDIT

| | | |
|---|---|---|
| 1 | 10/16/24 10:57:34 AM CDT | Quintarius McKinnie accepted Consumer Disclosure |
| 2 | 10/16/24 10:59:42 AM CDT | Quintarius McKinnie signed Flood Disclosure Notice |
| 3 | 10/16/24 11:00:56 AM CDT | Quintarius McKinnie signed Apartment Lease Form |
| 4 | 10/16/24 11:00:57 AM CDT | Quintarius McKinnie dated Apartment Lease Form |
| 5 | 10/16/24 10:59:53 AM CDT | Quintarius McKinnie signed Valet Trash Addendum |
| 6 | 10/16/24 10:59:55 AM CDT | Quintarius McKinnie dated Valet Trash Addendum |
| 7 | 10/16/24 11:00:03 AM CDT | Quintarius McKinnie signed Lease Addendum for Allocating Trash Removal and Recycling Costs |
| 8 | 10/16/24 11:01:00 AM CDT | Quintarius McKinnie signed Water/Wastewater Submetering Addendum |
| 9 | 10/16/24 11:01:07 AM CDT | Quintarius McKinnie signed Addendum for Rent Concession |
| 10 | 10/16/24 11:00:15 AM CDT | Quintarius McKinnie signed Animal Addendum |
| 11 | 10/16/24 11:00:18 AM CDT | Quintarius McKinnie dated Animal Addendum |
| 12 | 10/16/24 11:01:10 AM CDT | Quintarius McKinnie signed Bed Bug Addendum |

DOCUMENT AUDIT CONTINUED

| 13 | 10/16/24 11:01:11 AM CDT | Quintarius McKinnie dated Bed Bug Addendum |
| 14 | 10/16/24 11:01:14 AM CDT | Quintarius McKinnie signed Required Insurance Addendum to Lease Agreement |
| 15 | 10/16/24 11:01:15 AM CDT | Quintarius McKinnie dated Required Insurance Addendum to Lease Agreement |
| 16 | 10/16/24 11:01:18 AM CDT | Quintarius McKinnie signed Community Policies Addendum |
| 17 | 10/16/24 11:00:21 AM CDT | Quintarius McKinnie signed Construction Activities Addendum |
| 18 | 10/16/24 11:01:22 AM CDT | Quintarius McKinnie signed Enclosed Garage Addendum |
| 19 | 10/16/24 11:00:25 AM CDT | Quintarius McKinnie signed Insurance Addendum |
| 20 | 10/16/24 11:00:29 AM CDT | Quintarius McKinnie signed Lease Addendum for Access Control Devices |
| 21 | 10/16/24 11:00:32 AM CDT | Quintarius McKinnie signed Lease Addendum for Addressing Carrying Firearms Onsite |
| 22 | 10/16/24 01:11:04 PM CDT | Quintarius McKinnie signed Lease Addendum for Allocating Services and Government Fees |
| 23 | 10/16/24 11:01:26 AM CDT | Quintarius McKinnie signed Lease Addendum for Patio or Yard Maintenance |
| 24 | 10/16/24 11:01:40 AM CDT | Quintarius McKinnie signed Lease Addendum Regarding Smoking |
| 25 | 10/16/24 01:16:05 PM CDT | Quintarius McKinnie checked box on Lease Addendum Regarding Smoking |
| 26 | 10/16/24 11:02:13 AM CDT | Quintarius McKinnie signed Mold Information and Prevention Addendum |
| 27 | 10/16/24 11:03:16 AM CDT | Quintarius McKinnie dated Mold Information and Prevention Addendum |
| 28 | 10/16/24 11:03:22 AM CDT | Quintarius McKinnie signed Satellite Dish or Antenna Addendum |
| 29 | 10/16/24 11:03:24 AM CDT | Quintarius McKinnie signed Security Guidelines |
| 30 | 10/16/24 11:03:26 AM CDT | Quintarius McKinnie dated Security Guidelines |
| 31 | 10/16/24 11:03:29 AM CDT | Quintarius McKinnie signed Intrusion Alarm Addendum |
| 32 | 10/16/24 01:22:07 PM CDT | Quintarius McKinnie submitted signed documents |
| 33 | 10/16/24 01:42:47 PM CDT | Emely Villarreal accepted Consumer Disclosure |
| 34 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Flood Disclosure Notice |
| 35 | 10/16/24 01:42:47 PM CDT | Emely Villarreal dated Flood Disclosure Notice |
| 36 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Apartment Lease Form |
| 37 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Valet Trash Addendum |
| 38 | 10/16/24 01:42:47 PM CDT | Emely Villarreal dated Valet Trash Addendum |
| 39 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Lease Addendum for Allocating Trash Removal and Recycling Costs |
| 40 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Water/Wastewater Submetering Addendum |
| 41 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Addendum for Rent Concession |
| 42 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Animal Addendum |
| 43 | 10/16/24 01:42:47 PM CDT | Emely Villarreal dated Animal Addendum |
| 44 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Bed Bug Addendum |
| 45 | 10/16/24 01:42:47 PM CDT | Emely Villarreal dated Bed Bug Addendum |
| 46 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Required Insurance Addendum to Lease Agreement |
| 47 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Community Policies Addendum |
| 48 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Construction Activities Addendum |
| 49 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Enclosed Garage Addendum |
| 50 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Insurance Addendum |
| 51 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Lease Addendum for Access Control Devices |
| 52 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Lease Addendum for Addressing Carrying Firearms Onsite |
| 53 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Lease Addendum for Allocating Services and Government Fees |
| 54 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Lease Addendum for Patio or Yard Maintenance |
| 55 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Lease Addendum Regarding Smoking |
| 56 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Mold Information and Prevention Addendum |
| 57 | 10/16/24 01:42:47 PM CDT | Emely Villarreal dated Mold Information and Prevention Addendum |
| 58 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Satellite Dish or Antenna Addendum |
| 59 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Security Guidelines |

**DOCUMENT AUDIT CONTINUED**

| 60 | 10/16/24 01:42:47 PM CDT | Emely Villarreal dated Security Guidelines |
| 61 | 10/16/24 01:42:47 PM CDT | Emely Villarreal signed Intrusion Alarm Addendum |
| 62 | 10/16/24 01:42:47 PM CDT | Emely Villarreal submitted signed documents |